BENJAMIN S. PENDLETON & Co., Plaintiffs in Execution, *vs.* ENOCH R. MILLS, HEZEKIAH HARRISON, JOSEPHUS HARRISON, SAMUEL HARRISON, Defendants in Execution, and JOSHUA CALAHAN, Claimant.

*Motion for New Trial.*

1. Where a parent permits personal property to go into possession of a daughter, on her marriage, or shortly afterwards, and to remain there, for a length of time; it will be considered a gift, and the property vests in the husband.

2. If any condition is attached to such gift; it must be expressed, at the time the possession is changed.

3. A new trial will not be granted, on the ground of a verdict's being against evidence, merely because the evidence preponderates against the verdict, where there is proof on both sides, and no rule of law violated.

This was a claim case, for the purpose of trying the right of property, to a certain negro girl, by the name of Sarah, which had been levied on as the property of Samuel Harrison, one of the defendants, by virtue of the above stated fi. fa.

A claim had been interposed, by Joshua Calahan, as the next friend of two minor children, to-wit, Jephthah and Elizabeth Harrison, the children of the defendant. On the trial of said case, the Jury returned a verdict, finding the property subject. The counsel then moved for a new trial, upon the ground, that the Jury found contrary to Law and evidence.

On behalf of plaintiff, it was proven, that the negro girl was in the possession of defendant, at the time of the levy, and that he had had her in possession, and had exercised acts of ownership over her, for four or five years. On the part of the claimant, a deed of gift, made by Joshua Calahan, and his wife, Sarah Calahan, bearing date on the 22d February, 1841, conveying said negro to said children, was offered in evidence. The execution of said deed was proven, by the

[Pendleton & Co. *vs.* Mills & al.]

subscribing witness, A. J. Williford, who is the son of Sarah Calahan, and brother in law to the defendant, who was examined by interrogatories. Upon his cross examination, when asked when said deed was executed, he says he does not recollect the precise time; and, on being asked whether it was made at the time it bears date, or afterwards, he answers that it was made after the time it bears date; and assigns as a reason, that the deed, first made to the children, was thought to be informal, and it was agreed, by the parties, at the time of making the first deed, that if it was not in proper form, another should be made, bearing the same date; and accordingly, the deed exhibited was made to bear date with the one first made. He is again asked to be particular, and to state, as near as possible, at what time he subscribed said deed, as a witness; to this he replies, as before, that he does not recollect the precise time. He further testifies, that he has known the girl, ever since she was born—that he first saw her, in his mother's possession, and that that possession was not changed, until the year 1838, at which time she was sent to Harrison's (the defendant) to wait on his wife, who was sick, and that she has been in the possession of Harrison, ever since. The claimant also read the interrogatories of David Williford, another son of claimant's wife, for the purpose of accounting for the possession of defendant. He says, that the girl was loaned to defendant's wife, by claimant's wife, until the termination of a law suit, then pending in De Kalb County, against Joshua Calahan and his wife. Upon his cross examination, he is asked, if he was present, at the time the negro girl first went into the possession of Harrison, the defendant, and he answers, he was not. He further states, that defendant has had her in possession ever since 1837, or 1838. He is then asked, how he got his information, respecting the possession of said girl, and whether he knows any thing, of his own knowledge, respecting the said possession, or whether he had received his information from others, and from whom? and he evades the force of this question, by saying that he had already answered it.

This is the substance of the testimony on both sides. The facts, then, established by the evidence, seem to be these—that Mrs. Calahan was a widow—that this negro girl was born her's, during her widowhood—and that Joshua Calahan intermarried with her—that subsequently, the defendant married Mrs. Callahan's daughter, and

that some time after their marriage, this negro girl went into defendant's possession, and has remained there ever since. It was contended by counsel for plaintiff, that this possession of defendant, thus acquired, vested in him a good title; and that the property was therefore subject to the judgment. On the other hand, it was contended, that Calahan and wife had never parted with the title of said negro, to defendant, but that he held the negro, by virtue of a loan, until the time of the execution of the deed of gift, and afterwards as the natural guardian of his children. I understand the doctrine, as laid down in the books, to be this—That when a parent permits personal property to go into the possession of a daughter, on her marriage, or shortly afterwards, and to remain there, for a considerable length of time, it will in law be presumed to be a gift, and will vest a good title to the property, in the son-in-law. And if any condition is attached to the gift, it must be expressed, at the time the possession is changed.—2 *McCord's Ch. R.* 131; 2 *Nott & McCord,* 93; 1 *Bay's R.* 232. The question then is whether, according to the testimony, and these authorities, this was, in the eye of the law, a loan, or a gift. One of the witnesses testifies, that when the girl went into the possession of defendant, she went there, for the purpose of waiting on his wife, who was sick; but says nothing about any conversation at the time, going to shew that she was loaned. The other witness states, that she was loaned by Mrs. Calahan to her daughter, for a certain time, or until a certain contingency should happen; but on his cross-examination, he says he was not present at the time, and he refuses or fails to answer, how or from whom he derived his information. I think, then, that his testimony cannot be relied on, as establishing the fact satisfactorily. And according to the authorities referred to, if there was no condition or stipulation, at the time the possession was changed; it would be considered a gift, and would vest a good title in defendant, which could not be afterwards divested, by any act of the donor. I think, then, when we take into consideration all the facts of this case,—first, that the girl went into possession of defendant and wife, in the year 1837 or 1838, and was permitted to remain there, without any conveyance of any kind, until the year 1841, after the rendition of the judgment in favor of plaintiffs—and that the possession was not even then changed, but a deed of gift was made, by claimant and wife, conveying the negro to defendant's children; and that, for some cause or other,

[Pendleton & Co. *vs.* Mills & al.]

that deed was cancelled, and the present deed executed,—and that said deed does not bear date, at the time it was made,—it cannot be said to be a case, free from doubt, or that the verdict is manifestly contrary to the evidence. If there be sufficient evidence to support the verdict, the Court will not grant a new trial, though the evidence may preponderate against the verdict; especially when no principle of Law has been violated.* Then, after maturely examining all the facts of this case, I am not prepared to say, that said verdict is contrary to Law, or evidence. The motion for a new trial is therefore refused.

CALHOUN & DABNEY, for motion; and IRWIN, contra.

---

* See *Ante*, 42, 82, 136, 161.